IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER J. CASTILLO,

    Plaintiff,

v.                                                                   Civ. No. 14-407 MV/KK

LAS CRUCES POLICE DEPARTMENT *et al.*,

    Defendants.

## ORDER DENYING MOTION TO APPOINT COUNSEL

THIS MATTER comes before the Court on Plaintiff's Motion to Appoint Counsel (Doc. 14), filed August 18, 2014.  For the following reasons, the Court finds that Plaintiff's motion is not well taken and will be denied.

### *Background*

Plaintiff Christopher Castillo is incarcerated at the Central New Mexico Correctional Facility.  On March 13, 2014, Plaintiff filed the instant lawsuit, alleging that Defendants the Las Cruces Police Department and Cody Austin violated his constitutional rights in the course of the arrest that led to his incarceration.[1]  (See generally Doc. 1, Att. 2.)  Plaintiff subsequently filed this motion to appoint counsel.  Defendant filed a response in opposition to Plaintiff's motion on September 2, 2014 (Doc. 17), and Plaintiff filed a reply in support of his motion on September 23, 2014 (Doc. 19).

---

[1] Plaintiff filed this case in state court, and Defendants removed it to federal court on May 1, 2014.  Plaintiff is nevertheless an experienced federal court litigant.  "Plaintiff has filed approximately twenty-four prisoner complaints in [f]ederal [c]ourt in California," (Doc. 13), and three other prisoner complaints in this district, specifically, Castillo v. New Mexico Behavioral Health Inst., Civ. No. 13-876 JCH/WPL, Castillo v. San Quentine State Prison, Civ. No. 12-709 MV/LFG, and Castillo v. Vitale, Civ. No. 12-295 JP/WDS.

## *Analysis*

United States District Courts lack the authority to appoint counsel to represent indigent prisoners in cases brought under 42 U.S.C. § 1983. Mallard v. United States Dist. Ct., 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances, a court may request the voluntary assistance of counsel in such cases pursuant to 28 U.S.C. § 1915(e)(1). The court must "give careful consideration to all the circumstances with particular emphasis upon certain factors that are highly relevant to a request for counsel." Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995) (internal quotation marks omitted). These factors include

> the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.

Id. (internal quotation marks omitted). This analysis "contemplates an examination of the state of the record at the time the request is made." McCarthy v. Weinberg, 753 F.2d 836, 838 (10th Cir. 1985). Ultimately, the plaintiff bears the burden of convincing "the court that there is sufficient merit to his claim to warrant" a request for *pro bono* counsel. Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004) (internal quotation marks omitted).

The parties sharply disagree regarding the first factor the Court must consider, *i.e.*, the merits of Plaintiff's claims. Plaintiff maintains that his claims are "valid." (Doc. 19 at 1.) In his Complaint, Plaintiff alleges that his Fourth Amendment rights were violated in the course of his arrest on November 7, 2011. (Doc. 1, Ex. 2.) According to Plaintiff, on that date he was walking in a public place when Defendant Austin "appear[ed] out of nowhere," and "yelled out [Plaintiff's] full name," to which Plaintiff responded, "yes[,] what do you want?" (Doc. 1, Ex. 2 at 2.) Defendant Austin then arrested Plaintiff and searched his person, stating that he had a description of Plaintiff and that Plaintiff had an outstanding warrant for an unpaid fine. (Id.)

Plaintiff claims that he did not match the description Defendant Austin had of a man dressed in women's clothing carrying a large duffel bag. (Id.) According to Plaintiff, he was wearing "tan pants, [a] nice t-shirt, [and] white tennis shoes" at the time of his arrest. (Id.) Plaintiff also alleges that Defendant Austin "grabbed [Plaintiff's] crotch and butto[cks]" during the search of his person. (Id.)

Defendants, in contrast, argue that Plaintiff has asserted no colorable claims. (Doc. 17 at 2-3.) According to Defendants, Plaintiff's mother Maria Lara informed Las Cruces Police Department ("LCPD") personnel that Plaintiff attacked her with a metal bat. (Id.) Defendants contend that a neighbor, Monique Alvelar, intervened in the attack, and Plaintiff retreated to an alley. (Id.) Ms. Alvelar allegedly later saw Plaintiff leave the alley wearing a white shirt, khaki pants, and white shoes. (Id.) According to Defendants, Ms. Alvelar provided this information to LCPD personnel, who then broadcast Plaintiff's description by radio. (Id.) "Minutes after the attack, [Defendant] Austin saw Plaintiff walking blocks away from the scene. Plaintiff matched the description provided by the radio broadcast." Id. Defendants claim that Defendant Austin then arrested Plaintiff and searched Plaintiff's person and pockets incident to the arrest.

Plaintiff in his reply affirmatively states that he did not attack Ms. Lara with a metal bat, but otherwise does not directly contradict Defendants' version of events. (Doc. 19 at 2.) He devotes a considerable portion of his reply to challenging Ms. Lara's credibility. (Id.)

At this stage of the litigation, with only the parties' unsworn allegations before the Court, Plaintiff does not appear to have asserted a colorable constitutional claim against Defendants. Initially, the warrantless arrest of Plaintiff appears to have been constitutional. Under the Fourth Amendment, "[a] warrantless arrest is permissible when an officer has probable cause to believe

that a person committed a crime." Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotation marks omitted).  Probable cause exists

> when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been … committed.

Id. (quoting United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004)).  In general, "probable cause caselaw … presum[es] the reliability of citizen informants." J.B. v. Washington County, 127 F.3d 919, 930 (10th Cir. 1997) (citations omitted).  Also, an arresting officer may rely on "directions and information transmitted by one officer to another" in making and acting on a probable cause determination.  United States v. Hensley, 469 U.S. 221, 231 (1985) (quoting United States v. Robinson, 536 F.2d 1298, 1299 (9th Cir. 1976)); United States v. Christy, 810 F.Supp.2d 1219, 1260-61 (D.N.M. 2011), aff'd, 739 F.3d 534 (10th Cir. 2014).

Based on the record currently before the Court, Defendant Austin had probable cause to arrest Plaintiff for the aggravated battery of Ms. Lara.[2]  Defendant Austin was entitled to rely on the information Ms. Lara and Ms. Alvelar provided to LCPD personnel, identifying and describing Plaintiff as the person who attacked Ms. Lara.[3]  Plaintiff contests the accuracy of the description Defendant Austin received from the LCPD's radio broadcast; however, it was undeniably sufficiently accurate to allow Defendant Austin to identify Plaintiff "out of nowhere."  (Doc. 1, Ex. 2 at 2.)  In addition, Defendant Austin personally confirmed Plaintiff's identity by his full name before arresting him.  These "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient

---

[2] He may also have had probable cause to arrest Plaintiff on an outstanding warrant, according to Plaintiff's complaint.

[3] Plaintiff suggests that Defendants should not have relied on Ms. Lara's allegations because she is not credible. (Doc. 19 at 2.)  However, Ms. Lara's allegations were corroborated by Ms. Alvelar, a "citizen informant" whose reliability may be presumed.  J.B., 127 F.3d at 930.

in themselves to warrant a man of reasonable caution in the belief that an offense has been … committed." Cortez, 478 F.3d at 1115.

Likewise, the search of Plaintiff's person and pockets appears to have been constitutionally proper as a search incident to arrest. "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332 (2009). A search incident to arrest must be confined to the arrested individual's person and areas "from within which he or she might gain possession of a weapon or destructible evidence." Id.; Gant, 556 U.S. at 335. In the present matter, as discussed above, it appears that Defendant Austin lawfully arrested Plaintiff. As such, Defendant Austin was permitted to search Plaintiff's person and pockets incident to the arrest.

Perhaps most troubling is Plaintiff's assertion that Defendant Austin "grabbed [Plaintiff's] crotch and butto[cks]." (Doc. 1, Ex. 2 at 2.) The Court construes this as a Fourth Amendment excessive force claim against Defendant Austin. "The right to make an arrest … necessarily carries with it the right to use some degree of physical coercion … to effect it." Cortez, 478 F.3d at 1125. However, "[t]he degree of physical coercion that law enforcement officers may use is not unlimited"; rather, it must be objectively reasonable in light of the facts and circumstances of the particular case. Id. "[A] claim of excessive force requires some actual injury that is not *de minimis*, be it physical or emotional." Id. at 1129.

On the record now before the Court, it is unclear whether Defendant Austin's alleged grabbing of Plaintiff's crotch and buttocks was an objectively reasonable part of his search of Plaintiff's person, or something more malicious and constitutionally suspect. Plaintiff certainly suggests the latter by alleging that Defendant Austin laughed after engaging in these actions.

5

(Doc. 1, Ex. 2 at 2.)  For purposes of this motion, the Court will assume that Defendant Austin acted improperly.  Even so, Plaintiff does not appear to have asserted a colorable claim, because he has not alleged an "actual [physical or emotional] injury that is not *de minimis*" from Defendant Austin's doubtful actions, as distinct from the constitutional arrest and search of Plaintiff's person.  Id.  For all of the above reasons, an analysis of "the merits of [Plaintiff's] claim," Rucks, 57 F.3d at 979, based on "an examination of the state of the record at the time the request is made," McCarthy, 753 F.2d at 838, weighs against the Court requesting *pro bono* counsel for Plaintiff.

The remaining factors listed by the Rucks court also weigh against the Court requesting *pro bono* counsel for Plaintiff.  57 F.3d at 979.  Plaintiff's claims involve a discrete series of events occurring on a single day, in which he was extensively involved and for which there are a limited number of witnesses, with one of whom he is intimately acquainted.  As such, the factual issues raised are not particularly complex, and Plaintiff's ability to investigate them is considerable.  Likewise, Plaintiff concedes in his reply that the legal issues involved in the case are "not complicated," (Doc. 19 at 1); and indeed, they appear to involve the fairly straightforward application of black-letter Fourth Amendment law discussed above.

Finally, the Court must consider the "litigant's ability to present his claims."  Rucks, 57 F.3d at 979.  At this time, Plaintiff has not persuaded the Court that he cannot adequately present his claims. The Court has reviewed Plaintiff's filings in this matter, and although Plaintiff has failed to obtain the outcome he desires, he has been able to explain to the Court what he seeks and why he seeks it.  Plaintiff asserts that he finds it "very difficult to concentrate and focus when preparing pleadings," (Doc. 19 at 1); nevertheless, he has demonstrated that he is capable of both making arguments and responding to arguments offered against him.  Moreover,

6

Plaintiff's professed limited access to legal materials is undermined by his frequent reliance on terms of art.

The Court is certain that Plaintiff would have an easier time pursuing his lawsuit if an attorney represented him.  However, this is true of virtually any *pro se* litigant.  See, e.g., Rucks, 57 F.3d at 979 ("While we do not quarrel with [Plaintiff's] assertion that having counsel appointed would have assisted him in presenting his strongest possible case, the same could be said in any case.").  Because Plaintiff has no right to appointed counsel in this matter and has not met his burden of persuading the Court that his claims warrant a request for *pro bono* counsel, Plaintiff's motion must be denied.  To the extent that Plaintiff requests assistance in finding an attorney on his own, the Court will direct the Clerk to mail to Plaintiff a copy of the United States District Court for the District of New Mexico's "Guide for *Pro Se* Litigants," which lists resources for legal representation.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Appoint Counsel (Doc. 14) is DENIED at this time.

IT IS FURTHER ORDERED that the Clerk will mail a copy of the Court's "Guide for *Pro Se* Litigants" to Plaintiff.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE