IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER JAMES CASTILLO,

        Plaintiff,

v.                                                   1:14-cv-00407-MV-LF

CODY AUSTIN,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on defendant Cody Austin's Motion for Summary Judgment Based on Qualified Immunity (Doc. 37) and memorandum in support of his motion (Doc. 38). Pro se plaintiff Christopher James Castillo filed a response (Doc. 45), and Austin filed a reply (Doc. 54). Castillo also filed a motion to be released from custody (Doc. 41) and a motion for subpoenas (Doc. 42), which are both fully briefed. *See* Docs. 49, 48, 50, 51. At the Court's direction, Austin filed a *Martinez* report,[1] and Castillo filed a response. Docs. 39, 46. Pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Virginia Beach Fed.Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), the Honorable Martha Vazquez referred this case to me to recommend an ultimate disposition. Doc. 34. Having reviewed the submissions of the parties and the relevant law, I find that Austin is entitled to qualified immunity because his actions were reasonable under the circumstances, there is no dispute of material fact, and Austin is entitled to summary judgment as a matter of law.

---

[1] Under *Martinez v. Aaron*, 570 F.2d 317, 320 (10th Cir. 1978), this Court may order defendant to investigate the incident or incidents underlying plaintiff's lawsuit and submit a report of his investigation in order to develop a factual or legal basis for determining whether plaintiff has a meritorious claim. *See, e.g., Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

I.   **Background Facts and Procedural Posture**

Cody Austin is a police officer with the City of Las Cruces. Doc. 38-3 at 1. This case arises from a pat-down search Officer Austin conducted following his arrest of Castillo. Officer Austin encountered Castillo while searching for a suspect in a battery that had occurred in the area. *Id.* at 1–2. Officer Austin identified Castillo as the suspect he was looking for and placed him under arrest. *Id.* at 2. Officer Austin then performed a pat-down search of Castillo. *Id*. at 2–3. Castillo alleges that during the pat-down, Officer Austin fondled his penis and grabbed his buttocks. Doc. 1-2 at 2; Doc. 45 at 2; Doc. 46 at 2. Castillo later pled "no contest" to kidnapping and aggravated battery charges and was sentenced to several years in prison. Doc. 38-1; Doc. 38-2 at 6–7, 15. Castillo currently is housed at the Southern New Mexico Correctional Facility. Doc. 56 at 1.

Castillo brought several claims against Officer Austin and the Las Cruces Police Department. Doc. 1. In a *sua sponte* opinion and order, Judge Vazquez dismissed the Las Cruces Police Department and all of Castillo's claims except his claim that Officer Austin physically and/or sexually abused him during the initial pat-down search.[2] Doc. 25. Officer Austin's motion for summary judgment and portions of the *Martinez* report address this claim. Docs. 37, 38, 39 at 7–10.[3] Officer Austin argues that he is entitled to qualified immunity under the circumstances of this case. *Id.* I agree.

---

[2] Officer Austin performed a second pat-down search after he transported Castillo to the police station. Doc. 38-4 at 2. The second pat-down is not at issue in this case. Doc. 25 at 3 (ruling "the claim of physical/sexual abuse during Austin's initial search will remain pending.").

[3] The Court ordered Officer Austin to address the allegations in Castillo's complaint regarding abuse at the Doña Ana County Detention Center (DACDC). Doc. 36. Officer Austin noted the difficulty in addressing these claims as the City of Las Cruces does not have any organizational control or responsibility for the DACDC, nor is he an employee of DACDC. *See* Doc. 39 at 2–3; Doc. 39-8; Doc. 38-3 at 1. Castillo has not named or served the DACDC, Doña Ana County, or any county employees as a defendant. Consequently, the portions of the *Martinez* report that address Castillo's allegations against DACDC are not relevant to the disposition of this case.

## II.     Castillo's Untimely Responses

This Court ordered Officer Austin to file and serve his *Martinez* report and any dispositive motions on or before December 18, 2015, which he did. Docs. 36, 37, 38, 39. The Court ordered Castillo to file his repose to the *Martinez* report and any dispositive motions on or before January 19, 2016. Doc. 36. Castillo filed his responses on February 29, 2016, more than a month after they were due. Docs. 45, 46. In his reply, Officer Austin points out that Castillo's responses are untimely and asks the Court to disregard them. Doc. 54.

Under our local rules, "[f]ailure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). The Court cannot, however, grant a motion for summary judgment based solely on a plaintiff's failure to respond; it must consider the merits of the motion. *See Reed v. Bennett,* 312 F.3d 1190, 1194–95 (10th Cir. 2002). When a party fails to respond to a motion for summary judgment, a district court can properly grant the motion only "if the motion demonstrates no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Id.* at 1196. Failure to respond does "not relieve the court of its duty to make the specific determination required by FED. R. CIV. P. 56(c)." *Id.* Accordingly, although the local rules provide that a party's failure to respond to a motion for summary judgment is deemed consent for the Court to grant the motion, the Court nonetheless will address the merits of such a motion and generally does not grant dispositive motions on procedural defaults alone. *See Sawyer v. USAA Ins. Co.,* 912 F. Supp. 2d 1118, 1144 (D.N.M. 2012).

Castillo filed responses to Officer Austin's motion for summary judgment and *Martinez* report more than a month late. Castillo explained that he had problems with the prison mail room that prevented him from filing a timely response. Doc. 45 at 1. Officer Austin does not

3

contend that he is prejudiced as a result of the late responses. *See* Doc. 54. Given the Court's obligation to rule on the substance of Officer Austin's motion for summary judgment—even in the absence of a response—and given Castillo's explanation, I will consider Castillo's untimely responses for the purposes of my recommendation.

### III. Legal Standards

#### A. Summary Judgment

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). There is no genuine dispute if the record taken as a whole would not lead the trier of fact to find in favor of the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The "materiality" of a fact is determined by substantive law. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions. FED. R. CIV. P. 56(c)(1)(A); *see also* D.N.M.LR-Civ. 56.1(b).

The court must view the record and all reasonable inferences from it in the light most favorable to the non-movant, s*ee Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000), but it need consider only the materials cited by the parties, FED. R. CIV. P. 56(c)(3).

If a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, where the movant is entitled to it, grant summary judgment. FED. R. CIV. P. 56(e); D.N.M.LR-Civ. 56.1 ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

### B. Qualified Immunity

Officer Austin asserts that he is entitled to summary judgment based on qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Court reviews qualified immunity questions differently from other summary judgment decisions. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). When a defendant raises qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the challenged conduct. *See Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). The Court may decide which prong to address first. *Pearson*, 555 U.S. at 236. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (internal quotations and citation omitted).

### IV. Undisputed Material Facts

On November 7, 2011, Castillo attacked his mother, Maria Lara, with a baseball bat. Doc. 38 at 2, Undisputed Material Fact (UMF) No. 1. Castillo's attack constituted aggravated battery with a deadly weapon, a third degree felony. Doc. 38 at 2, UMF No. 2. Cody Austin is a police officer with the Las Cruces Police Department. Doc. 38-3 at 1. On November 7, 2011, Officer Austin was dispatched to the scene of the aggravated battery and alerted to a B.O.L.O. (Be On the Look Out) for Castillo based on Lara's description after the attack. Doc. 38 at 2, UMF No. 3. Shortly after receiving the B.O.L.O, Officer Austin located Castillo and confirmed his identity.[5] Doc. 38 at 2, UMF No. 5. Officer Austin then arrested Castillo for the attack on Lara. Doc. 38 at 2, UMF No. 6. Castillo does not specifically controvert these facts.

Following the arrest, Officer Austin placed Castillo in handcuffs and performed a pat-down search. Doc. 38 at 2–3, UMF Nos. 7–8. Officer Austin's search included patting down Castillo's chest, back, and under his arms with an open palm. Doc. 38 at 3, UMF No. 9. Officer Austin searched Castillo's pants pockets by placing his hands in Castillo's pockets. Doc. 38 at 3, UMF No. 10. Officer Austin's search also included touching Castillo's crotch and buttocks with an open palm. Doc. 38 at 3, UMF No. 11.[6] Officer Austin conducted the pat-

---

[5] Officer Austin's affidavit states that he "asked Mr. Castillo for his full name." Doc. 38-3 at 2, 11. Castillo's complaint alleges that Officer Austin yelled his full name, and Castillo "turned around and said yes, what do you want?" Doc. 1-2 at 2. Whether Officer Austin asked Castillo his name or yelled Castillo's name is not relevant. There is no genuine dispute that Officer Austin confirmed Castillo's identity.

[6] Castillo alleges that during the pat-down, Officer Austin grabbed his genitals and buttocks, and fondled his penis. Docs. 1 at 2, 45 at 2, 46 at 2. Because of the vague and conclusory nature of these allegations, the Court ordered Castillo to provide a statement specifically describing what Officer Austin did during the pat-down of Castillo's genital area and buttocks. Doc. 55. The Court advised Castillo that if he failed to submit his supplemental statement by August 9, 2016, the Court would consider Officer Austin's description of events as undisputed for the purposes of his motion for summary judgment. *Id.* at 2. Castillo did not submit a supplemental statement as ordered. The only document filed by Castillo after the order was issued was a letter to the Court

down to search for weapons that could endanger him, the public or Castillo. Doc. 38 at 3, UMF No. 12; Doc. 38-3 at 3.

V. **Discussion**

Castillo's only remaining claim is that Officer Austin physically and/or sexually abused him during the pat-down search, which implicates Castillo's Fourth Amendment rights. "The Fourth Amendment normally requires that law enforcement officers obtain a warrant, based on probable cause, before conducting a search." *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998). One exception to this rule is that an officer "may conduct a warrantless search of a person when it is incident to a lawful arrest of that person." *Id.*; *see also Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest."). In *Gant*, the Supreme Court explained that "[t]he exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338. A search incident to an arrest may include the arrestee's person and the area within his or her immediate control. *Id*. at 339. The scope of a search incident to an arrest must be "commensurate with the purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id*.

There is no dispute that Officer Austin's pat-down search of Castillo was incident to his arrest. Castillo contends, however, that the manner in which Officer Austin conducted the search was sexually invasive. All searches—including those incident to an arrest—must be reasonable. *See U.S. v. Edwards*, 666 F.3d 877, 883 (4th Cir. 2011). The reasonableness of an

---

inquiring about the status of the case and elaborating on complaints of his current living conditions at the detention center. Doc. 56. Castillo has failed to specifically controvert Officer Austin's version of the facts. Consequently, the Court will accept Officer Austin's version as undisputed for the purposes of his motion for summary judgment.

alleged sexually invasive search requires courts to balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). To determine whether the scope of a search is reasonable, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

In *United States v. Robinson*, 414 U.S. 218 (1973), the Supreme Court reaffirmed the broad scope of authority the police possess to conduct searches incident to arrest. The Court stated:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Id.* at 235. Accordingly, the Court condoned "a relatively extensive exploration of the person," *id.* at 227, but stated that it would find unconstitutional a search that was extreme or patently abusive. *Id.* at 236.

Cases where courts have found a sexually invasive search "extreme" or "patently abusive"—and, therefore, unreasonable—generally involve a search where the arrestee's genitalia or buttocks are exposed to the public, or where the officer touches the suspect's genitalia or buttocks under the suspect's clothes. *See, e.g.*, *Campbell v. Miller*, 499 F.3d 711 (7th Cir. 2007) (finding officers performed an unreasonable strip search conducted in a back yard within view of the resident's occupants and neighbors, and without any apparent justification); *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001) (finding unreasonable a search where a male officer conducted a pat-down of a female detainee in public, the female arrestee's genitalia was exposed, and the officer's finger penetrated her vagina during the search); *United States v.*

8

*Edwards*, 666 F.3d 877 (4th Cir. 2011) (finding unreasonable a search where officers looked down the suspect's pants with a flashlight and used a knife to cut a sandwich baggie off of the suspect's penis); *but see United States v. Thomas*, 512 F.3d 383 (7th Cir. 2008) (finding reasonable a search where during the pat-down of the detainee's outer clothing, the officer felt a bulge and reached inside the detainee's underwear to retrieve contraband from between the detainee's buttocks).

In this case, the undisputed facts establish Officer Austin performed a reasonable pat-down search incident to his arrest of Castillo. After placing Castillo under arrest, Officer Austin patted down Castillo's chest, back, and underarms with an open palm and placed his hands in Castillo's pockets. Officer Austin touched Castillo's crotch and buttocks also using an open palm. Officer Austin conducted the search in an effort to discover weapons to protect himself and others, and to secure evidence. Although Officer Austin conducted the pat-down in public, there is no evidence that Officer Austin performed a strip search, placed his hands under Castillo's clothing, removed Castillo's clothing, or that Castillo's genitals or buttocks were exposed to the public during the pat-down. Nothing about the pat-down performed by Officer Austin was extreme or patently abusive. Accordingly, Officer Austin's pat-down search of Castillo was reasonable under the circumstances and not a violation of Castillo's constitutional rights. Because Castillo has failed to establish that Officer Austin violated his constitutional rights, Officer Austin is entitled to summary judgment based on qualified immunity.

## VI.     Castillo's Other Motions

Castillo filed a motion that requests his release from custody for alleged mistreatment. Doc. 41. Castillo's allegations cannot be addressed in this lawsuit. The only defendant in this case is Cody Austin, a police officer with the City of Las Cruces. The City of Las Cruces does

not have any organizational control or responsibility for the detention center where Castillo is being housed.  Castillo has not named or served any detention center employees as defendants in this case.  Where a plaintiff fails to properly serve a defendant, the court lacks personal jurisdiction over that defendant.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.")  Therefore, the issues that arise from any alleged mistreatment by prison officials is not properly before the Court.

Castillo also filed a motion for subpoenas.  Doc. 42.  Because I am recommending that the Court grant Officer Austin's motion for summary judgment and dismiss Castillo's complaint, Castillo's motion for subpoenas is moot.

### VII. Recommendation

For the reasons stated above, I recommend that the Court GRANT Officer Cody Austin's Motion for Summary Judgment Based on Qualified Immunity (Doc. 37), and dismiss Castillo's complaint with prejudice.  I further recommend that the Court DENY at moot Casillo's motion for subpoenas (Doc. 42), and DENY Castillo's motion for release (Doc. 41).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge